**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KNOLL, INC.** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 19-4566** |
| | : | |
| **SENATOR INTERNATIONAL** | : | |
| **LIMITED** | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                        **April 21, 2020**

Office furniture competitors dispute whether a United Kingdom company infringes on a United States company's patent for a version of an office table. The United Kingdom company sells its products to its United States affiliate which, in turn, sells this table through distributors in the United States. The United States company holding the patent sues only the United Kingdom company; it chose not to sue its United States affiliate. The United Kingdom company now moves to dismiss arguing we lack personal jurisdiction over it in Pennsylvania, but a federal court in Illinois may exercise personal jurisdiction. The United States company declined our offer for jurisdictional discovery, withdrew its arguments for general jurisdiction, and now argues only we may exercise personal jurisdiction under the federal long-arm statute, Federal Rule of Civil Procedure 4(k)(2), which applies if there is no District in the United States which could exercise personal jurisdiction. Limited to this assertion of specific jurisdiction, we agree with the United Kingdom company as to the inapplicability of Rule 4(k)(2) and transfer this case to the United States District Court for the Northern District of Illinois.

## I.    Background.

Knoll, Inc. develops, sells, and markets office furniture.[1] It owns U.S. Patent No. D839,638 for the PIXEL line of tables.[2]    Its patent covers the C-Leg version of the PIXEL table.[3]  Knoll alleges competitor Senator International Limited designed its Array table to copy the design of Knoll's PIXEL table with knowledge the Array table infringes Knoll's patent.[4]

Senator International Limited is a foreign private limited company incorporated and with its principal place of business in the United Kingdom.[5]  It develops, manufactures, distributes, and imports furniture products.[6]  Senator International Limited sells its allegedly infringing Array table products to its United States affiliate, Senator International, Inc., which, in turn, sells the table products through distributors in the United States including one in this District.[7]

The issue is whether we can exercise personal jurisdiction over the United Kingdom-based Senator International Limited. In response to Senator International Limited moving to dismiss the complaint for lack of personal jurisdiction, we ordered parties file memoranda describing whether we should allow Knoll thirty days of expedited jurisdictional discovery.[8] Both parties opposed jurisdictional discovery.[9]  Knoll asserted Federal Rule of Civil Procedure 4(k)(2) allows our exercise of personal jurisdiction in its memorandum opposing jurisdictional discovery.[10]  Senator International Limited "disagree[d] with Plaintiff's representation [Rule] 4(k)(2) establishes personal jurisdiction and [would] respond accordingly if and when Plaintiff responds to Defendant's Motion to Dismiss … and/or files an amended complaint."[11]  We proceed without the benefit of additional information from jurisdictional discovery.

In its amended Complaint, Knoll pleaded Senator International Limited has sufficient contacts with our District to support our exercise of general and specific jurisdiction.[12]  Knoll did not plead Rule 4(k)(2) as a basis for personal jurisdiction.[13]    Senator International Limited

moved to dismiss for lack of personal jurisdiction, arguing its lack of contacts with Pennsylvania prevent us from adjudicating Knoll's claims against it.[14]   Senator International Limited included declarations swearing "[t]he Accused Product is exclusively marketed, imported, and sold in the United States by Senator International, Inc. [Defendant's non-party U.S. subsidiary]; however, Senator International, Inc. has not engaged in any of those activities in the State of Pennsylvania."[15]

Knoll then withdrew its claim we have general jurisdiction over Senator International Limited.[16]   It also withdrew claims of specific jurisdiction over Senator International Limited except for the applicability of Federal Rule of Civil Procedure 4(k)(2).[17]   Knoll relies on the Rule 4(k)(2) to argue we may exercise personal jurisdiction due to Senator International Limited's lack of contacts with any state. In its reply, Senator International Limited argues Rule 4(k)(2) cannot apply because district courts in Illinois and Ohio could properly exercise personal jurisdiction.[18]

## II.   Analysis

Senator International Limited ("Senator UK") moves to dismiss arguing neither it nor Senator International, Inc. ("Senator US") are incorporated or maintain a regular and established place of business in Pennsylvania, and neither sold the allegedly infringing product in Pennsylvania.[19]   Knoll responds we may exercise specific personal jurisdiction over Senator UK under Federal Rule of Civil Procedure 4(k)(2).[20]   Senator UK replies Rule 4(k)(2) does not apply because Illinois or Ohio could properly exercise specific personal jurisdiction over it.[21]   We agree with Senator UK.  We may not proceed as we lack personal jurisdiction but we transfer to the Northern District of Illinois under 28 U.S.C. § 1631.

Knoll bears the burden of presenting facts establishing personal jurisdiction over Senator UK.[22]   A motion to dismiss for lack of personal jurisdiction "is inherently a matter which

requires resolution of factual issues outside the pleadings."[23]   Once Senator UK raised its jurisdictional defense, Knoll had the burden to "prov[e] by affidavits or other competent evidence that jurisdiction is proper."[24]   Knoll must present "actual proofs, not mere allegations."[25]   Knoll declined our offer of jurisdictional discovery.   It did not request a jurisdictional evidentiary hearing.   Because we base our determination on affidavits, Knoll "need only establish a prima facie case of personal jurisdiction."[26]   We also must accept Knoll's allegations as true and "construe disputed facts" in its favor.[27]

The United States Supreme Court recognizes two types of personal jurisdiction: general and specific.[28]   While Knoll pleaded general jurisdiction as a basis for our exercise of jurisdiction, Knoll withdrew this argument in its response to the motion to dismiss.[29]   Though Knoll does not defend its pleading of our specific jurisdiction based on Pennsylvania contacts in response to the motion to dismiss, instead solely arguing jurisdiction under Rule 4(k)(2), we briefly analyze specific jurisdiction based on Senator UK's contacts with Pennsylvania before discussing our inability to apply Rule 4(k)(2).

In analyzing personal jurisdiction issues in patent cases, we apply the law of the Court of Appeals for the Federal Circuit.[30]   In the specific jurisdiction analysis based on the defendant's contacts with the state where the district court sits, the Federal Circuit defers to the law of the relevant state and federal courts to interpret the state's long-arm statute.[31]   But we rely on Federal Circuit law to assess whether jurisdiction comports with the limitations of the due process clause.[32]   For the analysis under Rule 4(k)(2), "the Federal Circuit applies its own law to the entirety of the analysis."[33]

**A.    We cannot exercise specific jurisdiction based on Senator UK's contacts with Pennsylvania.**

Knoll pleads specific jurisdiction based on Senator UK's contacts with Pennsylvania; Senator UK responded with affidavits swearing lack of contacts with Pennsylvania. Although Knoll solely argued specific jurisdiction based on Rule 4(k)(2) in its response to the motion to dismiss, we briefly address specific jurisdiction based on contacts with Pennsylvania as pleaded.

We evaluate personal jurisdiction under a two-prong test: Whether jurisdiction exists under the state's long-arm statute and whether exercising jurisdiction comports with the limitations of the due process clause.[34]   In Pennsylvania, these two inquiries coalesce: Pennsylvania's long-arm statute allows jurisdiction over persons "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States."[35]

We apply a three-prong test to determine whether specific jurisdiction exists: "(1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair."[36]  The defendant should "reasonably anticipate being haled into court" in that state.[37]

Senator UK attached affidavits swearing to facts contradicting some of Knoll's pleadings. Though we construe disputed facts in favor of Knoll, Knoll had the burden of countering Senator UK's affidavits with sworn statements of its own, "not mere allegations." [38]   Knoll failed to meet its burden to support several facts plead in its amended Complaint and contradicted by Senator UK's affidavits.[39]  Knoll pleads Senator UK offers for sale, sells, distributes, makes, and/or imports office furniture and the Array table into Pennsylvania and this judicial district.[40] But Senator UK's Chairman and Managing director swore Senator UK has not made, used, sold,

imported or shipped the Array table into Pennsylvania.[41]  Knoll pleads Senator UK's personnel engage in regular and continuous business operations in this District, including facilitating corporate relationships with its customers in this judicial district and assisting customers in identifying ways its products and services meet its customers' office furniture needs.[42]  But Senator UK swore Senator UK does not regularly transact business in Pennsylvania.[43] Senator UK also swore it does not own or operate any facilities, maintain any office, place of business, telephone listing, or mailing address, own, lease, use, or possess real estate in, does not have any employees who live or regularly work in, is neither licensed nor registered to do business in, does not own or maintain any bank accounts in, does not have an agent for service of process in, and has not specifically directed advertisements to Pennsylvania.[44]  Knoll also pleads Senator UK advertises, markets, and offers for sale the Array table in Pennsylvania and in this judicial district through its website, but Senator UK swore their website never advertised the price of the Array table or allowed customers to order or purchase the table through the website.[45]  We accept Senator UK's statements in its affidavits as true because Knoll did not meet its burden of producing sworn statements of its own.

Knoll pleads uncontested jurisdictional facts about Senator UK's contacts with Pennsylvania, Illinois, California, New York, and the United States as a whole.[46]  We focus on pleaded uncontested facts on Senator UK's contacts with Pennsylvania. We accept as true Knoll's pleading Senator UK may *infrequently* offer for sale, sell, distribute, make, and/or import office furniture—but *not* the Array table—into Pennsylvania.[47]  Knoll also pleads Senator UK uses Ethosource as a distributor to sell and showcase products, but *not* the Array table, in this District.[48]  Knoll pleads Senator UK works with dealers and other distribution agents to improve promotion and sale of products.[49]  But Senator UK's U.S. affiliate, Senator US, swore 1.06

percent of its total sales in 2019 came from Pennsylvania.[50]   Senator US swore .42 percent of its total sales in January and February of 2020 came from Pennsylvania.[51]   Assuming for a moment Senator UK's U.S. affiliate sells, distributes, and imports more products than Senator UK into Pennsylvania, Senator UK may sell less then one percent of its total sales into Pennsylvania, and none of those sales include the Array table.[52]   Because we do not have the benefit of jurisdictional discovery, we do not know how many non-infringing products Senator UK sells in Pennsylvania.

In patent infringement cases, "the claim both 'arises out of' and 'relates to' the defendant's alleged manufacturing, using, or selling of the claimed invention."[53]   In *Walden v. Fiore*, the Supreme Court held: "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State."[54]   Suit-related conduct in a patent case is the alleged infringing activity—the basis for the cause of action—in the forum state.[55]   Typically, offers to sell or sale of the infringing product in the forum state provides the basis for specific jurisdiction.[56]   Although Knoll pleads Senator UK offered for sale and distributed the Array table in Pennsylvania, Senator UK's uncontroverted affidavit rebukes Knoll's allegation.  Knoll only successfully pleads Senator UK may infrequently conduct business in Pennsylvania, such as selling or distributing non-infringing products into Pennsylvania. These allegations, without more information, do not establish our specific jurisdiction based on suit-related contact with Pennsylvania.[57]   We do not see how this lawsuit arises out of or relates to Senator UK's contacts with Pennsylvania.

Knoll also pleads Senator UK advertises and markets the Array table through its website.[58]   The website solicits subscriptions to create its marketing list for advertising emails.[59] Senator UK's Chairman and Managing Director swore the website never advertised the price of

the Array table, nor does it allow customers to order or purchase the Array table through the website.[60]  The Court of Appeals for the Federal Circuit held an interactive website selling an infringing product but not specifically directed at residents in the judicial district did not confer personal jurisdiction, at least absent evidence residents in the judicial district "have ever actually used [the Defendant's] website to transact business."[61] Senator UK's website is "passive," not "interactive," "do[ing] little more than mak[ing] information available to those who are interested in it."[62]  Customers residing in this District could not use Senator UK's website to transact business.  Senator UK's passive website does not establish grounds for personal jurisdiction.

Because Knoll failed to allege jurisdictional facts establishing our personal jurisdiction based on activities purposely directed at residents of the forum forming the basis for its claims of patent infringement, we do not evaluate whether the exercise of jurisdiction would be reasonable and fair.  We now turn to Knoll's ultimate argument: whether Rule 4(k)(2) provides us personal jurisdiction over Senator UK.

### B.    Rule 4(k)(2) does not allow us specific jurisdiction over Senator UK.

Although Knoll relied solely on Senator UK's contacts with Pennsylvania to plead personal jurisdiction in its amended Complaint,[63] Knoll now argues Senator UK is subject to our personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2). "Rule 4(k)(2) can be considered even when the plaintiff has affirmatively pled a different basis for personal jurisdiction."[64]

Federal Rule of Civil Procedure 4(k)(2) "was adopted to provide a forum for federal claims in situations where a foreign defendant lacks substantial contacts with any single state but has sufficient contacts with the United States as a whole to satisfy due process standards and

justify the application of federal law."[65]  Rule 4(k)(2) allows us to exercise personal jurisdiction over a foreign defendant who has been served or waived service if several requirements are met: "(1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) the exercise of jurisdiction comports with due process."[66]

Senator UK does not dispute Knoll's claims arise under federal law. Because "federal patent law creates the cause of action or . . . the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law," Knoll's claims "arise under federal law for purposes of Rule 4(k)(2)."[67]  Knoll satisfies the first condition for applying the federal long-arm statute.

Senator UK also does not dispute the exercise of jurisdiction comports with due process. The due process analysis under Rule 4(k)(2) "contemplates a defendant's contacts with the entire United States, as opposed to the state in which the district court sits."[68]  Senator UK contends Illinois and Ohio could exercise personal jurisdiction over it due to its requisite minimum contacts with each state.[69]  Knoll satisfies the third condition for applying the federal long-arm statute.  But Knoll cannot satisfy the second condition because Senator UK is subject to personal jurisdiction in Illinois.

### C.    Senator UK is subject to personal jurisdiction in Illinois.[70]

Knoll argues Senator UK failed to identify a state which could exercise personal jurisdiction.[71]  Knoll reasons because Senator UK purports to not "do business in the United States,"[72] Senator UK is not subject to personal jurisdiction in any state's court of general jurisdiction.[73] Senator UK responds arguing its motion to dismiss recognized suit would have been proper in the Northern District of Illinois.[74]  Senator UK asserts Illinois and Ohio could

properly exercise personal jurisdiction over it, citing Knoll's own pleadings detailing Senator UK's contacts with Illinois and Ohio in its amended Complaint.[75]

The Court of Appeals for the Federal Circuit applies a burden-shifting approach, applying Rule 4(k)(2) when a foreign defendant contests personal jurisdiction and fails to identify another state in which jurisdiction would be proper.[76] "[T]he defendant is afforded the opportunity to avoid the application of the rule only when it designates a suitable forum in which the plaintiff could have brought suit."[77]

But consent alone will not do it.  Under Rule 4(k)(2) in patent infringement cases, consent to personal jurisdiction in a state's court of general jurisdiction is insufficient. "[A] defendant cannot defeat Rule 4(k)(2) by simply naming another state; the defendant's burden under the negation requirement entails identifying a forum where the plaintiff could have brought suit—a forum where jurisdiction would have been proper at the time of filing, regardless of consent."[78]

Knoll pleads Senator UK exhibited the Array table at the "NeoCon" trade show in Chicago, Illinois in June 2019, and Senator UK employees assisted setting up the showroom and attended the show.[79]  Knoll pleads Senator UK issued a press release promoting the Array table's showcase in a showroom in Chicago and providing potential customers the contact information for Senator UK's staff.[80]  Knoll also pleads Senator UK did business through its United States subsidiary, Senator US, which maintained a showroom displaying the Array table in Chicago, Illinois.[81]  On its website, Senator UK advertises the Chicago showroom as one of its United States locations.[82]  Senator UK argues these contacts, sufficient for the exercise of personal jurisdiction, existed before Knoll filed suit.[83]

Senator UK designates Illinois and Ohio as forums where the exercise of personal jurisdiction is proper. We proceed with an analysis of Senator UK's contacts with Illinois. To determine if Illinois can exercise personal jurisdiction over Senator UK, we must determine whether jurisdiction exists under the Illinois long-arm statute and whether exercising jurisdiction comports with the limitations of the due process clause.[84]   Because Illinois's long-arm statute allows the exercise of jurisdiction to the fullest extent permitted by the United States Constitution, the analyses under the Illinois long-arm statute and the due process clause collapse into a sole inquiry: "whether the nonresident defendant's connection or contact with Illinois is sufficient to satisfy federal and Illinois due process."[85]

The Court of Appeals for the Federal Circuit instructs us to evaluate a three-prong test to determine specific jurisdiction: "(1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair."[86] "The first two factors correspond with the 'minimum contacts' prong of the *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), analysis, and the third factor corresponds with the 'fair play and substantial justice' prong of the analysis."[87] With regard to the first factor, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."[88] "As to the second factor, also part of the minimum contacts analysis, the court must determine whether the suit arises out of or relates to the defendant's contacts with the forum."[89]

Under the three-prong test, "a court may properly assert specific jurisdiction, even if the contacts are isolated and sporadic, so long as the cause of action arises out of or relates to those contacts."[90] A "substantial connection" with a forum arising out of a "single act can support

jurisdiction."[91]  And "physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact."[92]

In *Synthes v. GMReis*, the Court of Appeals for the Federal Circuit held the district court could exercise specific jurisdiction over a foreign defendant who imported infringing products into the United States and traveled to the United States for the purpose of displaying infringing products at trade shows in the United States, attended by United States residents.[93]  The Court held such "deliberate contacts" with the forum supported the finding the foreign defendant purposely availed itself of the United States.[94]  While we analyze purposeful direction with regard to the Northern District of Illinois, not the United States as a whole, the jurisdictional facts giving rise to personal jurisdiction in *Synthes* are comparable to Senator UK's contacts to the Northern District of Illinois.

Like the foreign defendant in *Synthes*, Senator UK exhibited the allegedly infringing product, the Array table, at a trade show in Chicago, Illinois.[95]  Senator UK employees attended the trade show, helped with the use of the Array table at the tradeshow, and provided instructions explaining how the Array table should be configured in the showroom and how to properly promote the Array table in the showroom.[96]  Senator UK's deliberate contact with the tradeshow in Chicago, Illinois constitutes purposeful availment.  Senator UK's allegedly infringing product and staff physically entered Illinois when it imported the Array table and sent staff to Chicago for the trade show.  Knoll's patent infringement claim also arises out of and relates to those contacts because Senator UK imported the allegedly infringing product into Illinois and sent staff to assist with the promotion of that product in Illinois.

The third prong of the analysis asks whether the Northern District of Illinois's exercise of personal jurisdiction would be reasonable and fair. The Supreme Court held a showing of

minimum contacts usually satisfies the reasonableness prong: "Where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."[97]  Senator UK seeks to establish the exercise of jurisdiction in the Northern District of Illinois would be proper, so it does not assert unreasonableness of such jurisdiction.  And Knoll failed to present a compelling case why jurisdiction in the Northern District of Illinois would be unreasonable because Knoll did not argue unreasonableness. We do not see how it could be unreasonable or unfair to hale Senator UK into a forum it has purposely availed and to the forum where Knoll first learned of the existence of the allegedly infringing product.[98]  Knoll did not reach its burden to present a compelling case of unreasonableness.

Knoll cites only one case in support of the application of Rule 4(k)(2), but that case focuses on the third prong of the Rule 4(k)(2) analysis, due process, not the second prong, whether jurisdiction would be proper in any state's court of general jurisdiction. In *Southco, Inc. v. Fivetech Tech., Inc.*, Judge McLaughlin found the exercise of personal jurisdiction over the foreign defendant under Rule 4(k)(2) comported with the due process clause.[99]  Significantly, the foreign defendant failed to identify a proper alternative forum, unlike Senator UK.[100]  Knoll argues both the *Southco* defendant and Senator UK submitted declarations stating a lack of business contacts, offices, or employees in the United States.[101]  But Senator UK only submitted declarations swearing to a lack of connection to Pennsylvania—not to the whole United States, and not to Illinois.[102]

In its attempt to establish Knoll's contacts with the United States as a whole, Knoll inadvertently justifies Illinois's ability to properly exercise personal jurisdiction over Senator UK.  Knoll argues Senator UK conceded its knowledge of selling the infringing products to

Senator US for use and sale in the United States.[103]  Knoll also contends Senator UK is "actively involved in activities in the United States—including installation assistance, attendance at trade shows, directing technical assistance, and marketing efforts based in the United States."[104] Knoll's facts admit Senator UK directed these activities in Chicago, Illinois.

Senator UK disputes the applicability of *Southco* to the second prong of the Rule 4(k)(2) analysis, instead pointing to a case in the district court for the Eastern District of Texas as more helpful to our analysis.[105]  In *Georgetown Rail Equipment Co. v. Tetra Tech Canada Inc*., the magistrate judge recommended dismissing a patent infringement complaint asserting personal jurisdiction under Rule 4(2)(k).[106]  The foreign defendant in *Georgetown*, like Senator UK, identified more than one forum where personal jurisdiction would have been proper.[107]  The court held Rule 4(k)(2) cannot provide a basis for personal jurisdiction when the defendant identifies an alternate forum and factual basis for jurisdiction there.[108]

Had Knoll sued in the Northern District of Illinois instead of here, the Northern District of Illinois would have properly exercised personal jurisdiction over Senator UK. By importing its allegedly infringing product into Chicago for display at the tradeshow and sending its staff to attend and assist at the tradeshow, Senator UK purposely availed itself of "the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."[109]  Because Senator UK properly identified another state in which jurisdiction is proper, Rule 4(k)(2) does not apply and we lack specific jurisdiction over Senator UK.

### D.    We transfer to Northern District of Illinois.

A "district court that lacks personal jurisdiction must at least consider a transfer."[110] Congress provides we "shall" transfer the case rather than dismiss it "if [doing so] is in the interest of justice."[111]  We do, however, have "broad discretion" not to transfer.[112]  Our Court of

Appeals directs we "may transfer a case at the parties' request or sua sponte" and do not need to "investigate on [our] own all other courts that 'might' or 'could have' heard the case."[113] "Still, [we] must make some findings under [28 U.S.C.] § 1631, at least when the parties identify other courts that might be able to hear their case."[114]

Congress enumerated the requirements to transfer for lack of jurisdiction in 28 U.S.C. § 1631: If we find "there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court … in which the action or appeal could have been brought at the time it was filed or noticed."[115] We have already determined this action could have been filed in the Northern District of Illinois at the time it was filed.

As to whether transfer is in the interest of justice, "[n]ormally transfer will be in the interest of justice because . . . dismissal of an action that could be brought elsewhere is time-consuming and justice-defeating."[116] "Principles of sound judicial administration counsel" transfer to the Northern District of Illinois where jurisdiction may be properly exercised and venue is proper.[117]

We lack personal jurisdiction over Senator UK. We afforded the parties an opportunity for jurisdictional discovery. They declined. Rather than dismissing the case, Senator UK offered and our independent review confirmed the parties can proceed in the Northern District of Illinois which may exercise specific personal jurisdiction over Senator UK. We need not review the merits of the case at this stage but are mindful of the detailed allegations. The parties are entitled to judicial scrutiny and a resolution if they are unable to work out the issues. Rather than have them start over, transfer under section 1631 is warranted. We conclude transfer of this action to the Northern District of Illinois is in the interest of justice.

III.    **Conclusion**

We grant Senator International Limited's motion to dismiss Knoll's amended Complaint for lack of personal jurisdiction. We lack specific jurisdiction based on contacts with this District and Pennsylvania. Federal Rule of Civil Procedure 4(k)(2) does not provide specific jurisdiction because the Northern District of Illinois could properly exercise jurisdiction over Senator International Limited.  We transfer this case to the Northern District of Illinois in the interest of justice.

---

[1] ECF Doc. No. 22 at ¶ 40.

[2] *Id.* at ¶¶ 41–42. Knoll's C-Leg version of the PIXEL table are minimalistic, wheeled desks designed to connect to each other in various arrangements.

[3] *Id.*

[4] *Id.* at ¶¶ 74–76.

[5] *Id.* at ¶¶ 7–8.

[6] *Id.* at ¶ 43.

[7] *Id.* at ¶¶ 14, 23, 77; ECF Doc. No. 24-3 at ¶ 9.

[8] ECF Doc. No. 18.

[9] ECF Doc. Nos. 20, 21.

[10] ECF Doc. No. 20 at 1–2.

[11] ECF Doc. No. 21 at 4. We use the pagination assigned by the CM/ECF docketing system.

[12] ECF Doc. No. 22 at ¶¶ 34–37.

[13] *Id.*

[14] ECF Doc. No. 24 at 7-14.

[15] ECF Doc. No. 24-3 at ¶ 9.

[16] ECF Doc. No. 25 at 5 n.2.

[17] *Id.* at 5 ("Federal Rule of Civil Procedure 4(k)(2) provides a sufficient basis for personal jurisdiction."); *Id.* at 5 n.2 ("Plaintiff's argument that this Court lacks specific jurisdiction over Defendant are [sic] not based upon the relevant case law.")

[18] ECF Doc. No. 27 at 5–9. Senator International Limited also moves to dismiss Knoll's allegation of contributory infringement. Because we dismiss for lack of personal jurisdiction, we do not address Knoll's motion to dismiss for failure to state a claim.

[19] ECF Doc. No. 24-1 at 6.

[20] ECF Doc. No. 25 at 6–12.

[21] ECF Doc. No. 27 at 5–9.

[22] *Metcalfe v. Renaissance Marine, Inc*., 566 F.3d 324, 330 (3d Cir. 2009).

[23] *Time Share Vacation Club v. Atlantic Resorts*, 735 F.2d 61, 66–67 n.9 (3d Cir. 1984).

[24] *Metcalfe*, 566 F.3d at 330.

[25] *Time Share Vacation Club*, 735 F.2d at 66–67 n.9.

[26] *Metcalfe*, 566 F.3d at 330 (citing *O'Connor v. Sandy Lane Hotel Co*., 496 F.3d 312, 316 (3d Cir. 2007)).

[27] *Id.* (citing *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003)). Knoll requested oral argument. ECF Doc. No. 28.   Given our deference to its version of disputed facts not contested by affidavits, we see no need for oral argument.

[28] *See, e.g.*, *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773, 1780 (2017).

[29] ECF Doc. No. 25 at 5 n.2.

[30] *Synthes (U.S.A.) v. G.M. dos Reis Jr. Ind. Com. de Equip. Medico*, 563 F.3d 1285, 1293 (Fed. Cir. 2009) ("[P]ersonal jurisdictional issues in patent infringement cases are reviewed under Federal Circuit law, not regional circuit law"); *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008) (explaining Federal Circuit law controls the question of personal jurisdiction because "the jurisdictional issue is intimately involved with the substance of the patent laws.").

[31] *See Avocent Huntsville Corp.*, 552 F.3d at 1328; *see also Bos. Sci. Corp. v. Micro-Tech Endoscopy USA Inc.*, No. 18-1869, 2020 WL 229993, at *4 (D. Del. Jan. 15, 2020), *report and recommendation adopted*, No. 18-1869, 2020 WL 564935 (D. Del. Feb. 5, 2020).

[32] *See Avocent Huntsville Corp.*, 552 F.3d at 1328; *see also Bos. Sci. Corp.*, 2020 WL 229993, at *4.

[33] *Bos. Sci. Corp.*, No. 18-1869, 2020 WL 229993, at *4.

[34] *See, e.g., Trintec Indus. v. Pedre Promotional Prods.*, 395 F.3d 1275, 1279 (Fed. Cir. 2005).

[35] 42 Pa. Cons. Stat. Ann. § 5322; *O'Connor*, 496 F.3d at 316.

[36] *Polar Electro Oy v. Suunto Oy*, 829 F.3d 1343, 1348 (Fed. Cir. 2016).

[37] *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

[38] *Time Share Vacation Club*, 735 F.2d at 66–67 n.9.

[39] Knoll pleads several facts relating to contacts, but our review reaches far beyond allegations. Senator International Limited offers for sale, sells, distributes, makes, and/or imports office furniture—including importing, advertising, offering to sell, and selling the Array table—into the United States, in Pennsylvania, and in this District.  ECF Doc. No. 22 at ¶¶ 10, 13, 34.  Senator International Limited "and/or [Senator International Limited]'s affiliates" makes, uses, offers to sell, sells, and imports office furniture products into the United States.  *Id.* at ¶ 11.  Senator International Limited ships its products directly or indirectly into or through Pennsylvania, including through this District.  *Id.* at ¶ 34.

Senator International Limited's personnel—acting on behalf of Senator International Limited as representatives, employees, and agents—engage in regular and continuous business operations in the United States and in this District, including facilitating corporate relationships with its customers in this District and assisting customers in identifying ways its products and services meet their office furniture needs.  *Id.* at ¶ 12.

Senator International Limited and Senator International, Inc. refer to themselves collectively as "The Senator Group."  *Id.* at ¶ 15.  Senator International, Inc. maintains showrooms in Chicago, Illinois, San Francisco, California, and New York, New York.  *Id.* at ¶ 20.  Senator International Limited knows the Array table has been shown in these U.S. showrooms and advertises these locations as its U.S. locations on its website.  *Id.* at ¶¶ 20–21.

When Senator International Limited sells its Array table to Senator International, Inc., Senator International Limited knows Senator International Inc. will import the Array tables into the United States to be sold to customers in the United States.  *Id.* at ¶ 16.

Senator International Limited provides instructions for use and maintenance when it sells Array tables so its customers, including its U.S. customers, properly install and use the tables. *Id.* at ¶¶ 17–18.

Senator International Limited owns and maintains a website, where it makes available its Array Price List 2019. *Id.* at ¶ 15. The website solicits subscriptions to "Senator Group Marketing." *Id.* at ¶ 27. Senator International Limited solicits direct and customized marketing to customers, including United States customers and customers in this judicial district, through its website. *Id.* at ¶ 28. Senator International Limited sends direct mail and email advertisements to subscribers and solicits business from them. *Id.* at ¶¶ 29–30. Mailchimp, a United States company with offices in various states, processes the subscription information from Senator International Limited's website for later use consistent with its marketing objectives, such as marketing and promotion activities associated with the Array table. *Id.* at ¶ 31.

Among Senator International Limited's large number of distributors is Ethosource, which sells its products in Pennsylvania. *Id.* at ¶¶ 23–24. Ethosource maintains showrooms where customers can buy these products in King of Prussia and Reading, Pennsylvania. *Id.* at ¶ 23. Senator International Limited works with dealers and other distribution agents to provide an integrated network of knowledgeable teams for promotion and sale of Senator International Limited's products, including the Array table. *Id.* at ¶ 25. Senator International Limited works with distributors, including United States affiliated entities, to provide supportive sale and service functions while receiving feedback informing its product development strategy. *Id.* at ¶¶ 26, 79.

Senator International Limited included the Array tables in a showroom at the NeoCon trade show in Chicago, Illinois, in June 2019. *Id.* at ¶ 45. Senator International Limited's press release informed consumers the Array table would be shown at NeoCon, instructing them to contact its UK-based head of marketing and her contact information. *Id.* at ¶ 50. Attendees of the NeoCon trade show include people from this judicial district, who received offers for sale of the Array table. *Id.* at ¶¶ 46, 47. Senator International Limited's personnel attended the NeoCon event, providing assistance for the use of the Array table and providing instructions for the table's configuration. *Id.* at ¶ 51. Senator International Limited personnel scanned attendees' badges as they entered their showroom, providing information later used for marketing, promotion, and sales efforts. *Id.* at ¶ 52.

Senator International Limited provided the Array table with knowledge of its use at the NeoCon showcase. *Id.* at ¶ 49. It also knew the Array table would be considered in the Best of NeoCon award category, publicizing the table to U.S. customers of furniture products. *Id.* at ¶ 49. When the Array table won Best of NeoCon Silver award, Senator International Limited publicized the award on its website and via its email marketing efforts. *Id.* at ¶ 53.

---

[40] ECF Doc. No. 22 at ¶¶ 10, 13, 34.

[41] ECF Doc. No. 24-2 at ¶¶ 14–17, 21.

[42] ECF Doc. No. 22 at ¶ 12.

[43] ECF Doc. No. 24-2 at ¶ 12.

[44] *Id.* at ¶¶ 5–11, 18.

[45] ECF Doc. No. 22 at ¶ 61; ECF Doc. No. 24-2 at ¶ 19.

[46] ECF Doc. No. 22 at ¶¶ 10, 16, 20.

[47] ECF Doc. No. 22 at ¶¶ 10, 13, 34; ECF Doc. No. 24-2 at ¶¶ 12, 14–17.

[48] ECF Doc. No. 22 at ¶¶ 23, 24; ECF Doc. No. 24-2 at ¶¶ 12, 14–17.

[49] ECF Doc. No. 22 at ¶ 25.

[50] ECF Doc. No. 24-4 at ¶ 7.

[51] *Id.* at ¶ 8.

[52] ECF Doc. No. 24-2 at ¶ 12.

[53] *Avocent Huntsville Corp. v. Aten Intern. Co., Ltd.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008).

[54] *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

[55] *HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1308 (Fed. Cir. 1999).

[56] *See, e.g.*, *Polar Electro Oy v. Suunto Oy*, 829 F.3d 1343, 1351 (Fed. Cir. 2016) ("[A]ctive participation in supplying and shipping the accused products to Delaware thus constitutes purposeful availment").

[57] *See, e.g.*, *Presby Patent Tr. v. Infiltrator Sys., Inc.*, No. 14-542, 2015 WL 3506517, at *3 (D.N.H. June 3, 2015).

[58] ECF Doc. No. 22 at ¶ 61.

[59] *Id.* at ¶¶ 28–31.

[60] *Id.* at ¶ 19.

[61] *Trintec Indus., Inc. v. Pedre Promotional Prod., Inc.*, 395 F.3d 1275, 1281 (Fed. Cir. 2005).

[62] *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F. Supp. 1119, 1124 (W.D. Pa. 1997).

[63] ECF Doc. No. 22 at ¶¶ 34-37.

[64] *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1296 (Fed. Cir. 2012).

[65] *Id.* at 1294.

[66] *M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, 890 F.3d 995, 999 (Fed. Cir. 2018).

[67] *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1413 (Fed. Cir. 2009).

[68] *M-I Drilling Fluids UK Ltd.*, 890 F.3d at 999 (citations omitted).

[69] ECF Doc. No. 27 at 5–6.

[70] Senator UK argues both Illinois and Ohio can properly exercise personal jurisdiction over it. We analyze Senator UK's contacts with Illinois because the parties evinced more connections with Illinois than with Ohio and Senator UK need only name one other forum with proper jurisdiction to defeat application of Rule 4(k)(2).

[71] ECF Doc. No. 25 at 8.

[72] ECF Doc. No. 24-1 at 11.

[73] ECF Doc. No. 25 at 8.

[74] ECF Doc. No. 24-1 at 6; ECF Doc. No. 27 at 7.

[75] ECF Doc. No. 27 at 4.

[76] *Touchcom, Inc v Bereskin & Parr*, 574 F.3d 1403, 1415 (Fed. Cir. 2009).

[77] *Id.*

[78] *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1294 (Fed. Cir. 2012).

[79] ECF Doc. No. 22 at ¶¶ 45, 51; ECF Doc. No. 27 at 6.

[80] *Id.* at ¶ 50; ECF Doc. No. 22-5 at 2.

[81] ECF Doc. No. 22 at ¶¶ 20, 77; ECF Doc. No. 27 at 6.

[82] ECF Doc. No. 22 at ¶ 21; ECF Doc. No. 27 at 6.

[83] ECF Doc. No. 27 at 7.

[84] *See, e.g.*, *Trintec Indus. v. Pedre Promotional Prods.*, 395 F.3d 1275 (Fed. Cir. 2005).

[85] *Russell v. SNFA*, 2013 IL 113909, ¶ 30 (2013).

[86] *Polar Electro Oy v. Suunto Oy*, 829 F.3d 1343, 1348 (Fed. Cir. 2016).

[87] *Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1353 (Fed. Cir. 2017) (internal alterations omitted).

[88] *Id*. (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

[89] *Id*. (quotation marks and internal alterations omitted).

[90] *Synthes (U.S.A.) v. G.M. dos Reis Jr. Ind. Com. de Equip. Medico*, 563 F.3d 1285, 1297 (Fed. Cir. 2009).

[91] *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n. 18 (1985)).

[92] *Walden v. Fiore*, 571 U.S. 277, 285 (2014).

[93] *Synthes*, 563 F.3d at 1297-1298.

[94] *Id.* at 1298.

[95] ECF Doc. No. 22 at ¶ 45.

[96] *Id.* at ¶ 51.

[97] *Burger King Corp.*, 471 U.S. at 477 ("Where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.").

[98] ECF Doc. No. 22 at ¶ 54; ECF Doc. No. 22-3 at 2.

[99] *Southco, Inc. v. Fivetech Tech., Inc.*, 2011 U.S. Dist. LEXIS 1982, at *12 (E.D. Pa. Jan. 10, 2011).

[100] *Id.* at *4.

[101] ECF Doc. No. 25 at 6.

[102] ECF Doc. Nos. 24-2, 24-3.

[103] ECF Doc. No. 25 at 6-7.

[104] *Id.* at 7.

[105] ECF Doc. No. 27 at 8.

[106] *Georgetown Rail Equipment Co. v. Tetra Tech Canada Inc.*, 2019 WL 5954966 at \*9 (E.D. Tex. July 17, 2019).

[107] *Id.* at \*6.

[108] *Id.* at \*8.

[109] *Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1353 (Fed. Cir. 2017) (internal alterations omitted).

[110] *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 132 (3d Cir. 2020).

[111] 28 U.S.C. § 1631.

[112] *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995).

[113] *Danziger*, 948 F.3d at 132 (citing 28 U.S.C. § 1404(a); *Amica Mut. Ins. Co. v. Fogel*, 656 F.3d 167, 171 (3d Cir. 2011); *Island Insteel Sys., Inc. v. Waters*, 296 F.3d 200, 218 n.9 (3d Cir. 2002)).

[114] *Id.*

[115] 28 U.S.C. § 1631.

[116] *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962).

[117] *See, e.g., Lawman Armor Corp. v. Simon*, 319 F. Supp. 2d 499, 507 (E.D. Pa. 2004); *see also Societe Nouvelle Generale de Promotion v. Kool Stop International, Inc.*, 633 F.Supp. 153, 155 (E.D. Pa. 1985) ("If the lack of *in personam* jurisdiction is in doubt, sound judicial administration requires transfer to a district where it clearly could have been brought").